**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INTERNATIONAL PROTECTIVE SERVICES, INC.,** | ) | |
| **Plaintiff,** | ) | **No. 03-2824C** |
| **V.** | ) | **(Judge Lettow)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

MOTION FOR SUSPENSION OF PROCEEDINGS

This is Plaintiff, International Protective Services, Inc.'s, ("IPI's") Motion to Suspend the proceedings in this action because it is filing a new claim with the contracting officer under the same contract, now alleging "lost profits". Mr. James Poirer, attorney representing the Department of Justice was contacted and Mr. Poirer does not oppose the request for the stay but is not endorsing the claim.

The new claim has not yet been submitted to the Contracting Officer and Plaintiff anticipates filing this claim shortly after this Motion is filed. Plaintiff is also substantially revising its heretofore filed claim and deleting significant portions of its heretofore filed claim. Plaintiff thereby requests a suspension of proceedings for a total of four months until April 11, 2007. Under the law in this circuit, Motions to Suspend usually are granted routinely. See Walker v. United States, 43 Fed. Cl. 519 (1999).

The reason for this request is that plaintiff's new claim asserts entitlement to "lost profits" alleging bad faith on the part of the government in terminating (canceling) its contract. Under applicable case law, primarily Apex International Management Services., 94-2 BCA 26, 842 Mar. 4, 1995, and Libertatia Associates Inc., v. United

States, 46 Fed Cl 702, May 23, 2000, Plaintiff can demonstrate that there existed a bad faith termination as well as a subsequent de facto debarment. These were not asserted in the underlying matter currently pending before the court, nor in Plaintiff's Request for Equitable Adjustment which was denied, which became the focus of the proceeding and the complaint which was filed when denied by the contracting officer. Plaintiff, at the time its initial REA was submitted, was represented by counsel not fully conversant in the field of federal government contract law.

When current counsel was retained, IPI retained an expert in federal procurement cost accounting familiar with federal government contract law. As this Court knows, IPI has repeatedly requested extensions of time to file an amended complaint, because of concerns as to supporting sufficiently the claims heretofore filed, as well as pursuing this issue of lost profits. In Plaintiff's previous requests for extensions of time, it informed the Court of the potential need to submit a second Request for Equitable Adjustment prior to its submission of its Amended Complaint.

Now the consultant's report has been completed, and is attached to this Motion as Exhibit 1, and shortly after this request to the Court to suspend the proceedings, we are filing a Request for an Equitable Adjustment, a copy of which is annexed herewith without exhibits, as Exhibit 2, with the contracting officer.

Briefly, this new REA in substance modifies the current pending claims and asserts additional claims as follows:

Jimmy J. Jackson, a consultant with, and the owner of Jackson Consulting, Inc. ("JCI"). provided his professional opinions on ISI's damages suffered as a result of the termination of ISI's Task Order #GS02P02CID0001,. and performed a damage

quantification which should be considered a replacement of the prior damage quantification. The training and unpaid invoice components of Jackson's quantification are refinements of the original claim and the lost profit components are new components.

After review by Mr. Jackson, ISI has reduced portions of its claim. ISI's claim filed on June 23, 2003 included a claim for training cost of $751,032.79. The revised training claim is now for $379,367, a refinement of the original claim. Attachment 7 to Jackson's Report included on the CD Rom, quantifies the Contracts Dispute Act ("CDA") simple interest of $59,585 on the training cost claim for the period June 3, 2004 through December 31, 2006.

ISI's damages suffered on the "NY Contract" as a direct result of the ISI's termination are computed by taking the Lost Billable Hours previously estimated times the Marginal Profit per Hour as follows:

| Contract Year | Lost Billable Hours Guard | Lost Billable Hours Supervisor | Overtime Guard | Overtime Supervisor | Total |
|---|---|---|---|---|---|
| CY 1 | 170,551 | 20,898 | 7,384 | 969 | 199,802 |
| CY 2 | 379,579 | 46,513 | 16,435 | 2,156 | 444,683 |
| CY 3 | 379,579 | 46,513 | 16,435 | 2,156 | 444,683 |
| CY 4 | 379,579 | 46,513 | 16,435 | 2,156 | 444,683 |
| CY 5 | 379,579 | 46,513 | 16,435 | 2,156 | 444,683 |
| Total Lost Billable Hours | 1,688,867 | 206,950 | 73,124 | 9,593 | 1,978,534 |

| Contract Year | Marginal Profit per Hour | | | |
|---|---|---|---|---|
| | Regular Time | | Overtime | |
| | Guard | Supervisor | Guard | Supervisor |
| CY 1 | $ 0.393 | $ 0.470 | $ (0.324) | $ (0.523) |
| CY 2 | $ 1.683 | $ 1.742 | $ 0.902 | $ 0.665 |
| CY 3 | $ 1.598 | $ 1.652 | $ 1.159 | $ 0.917 |
| CY 4 | $ 1.598 | $ 1.652 | $ 1.159 | $ 0.917 |
| CY 5 | $ 1.598 | $ 1.652 | $ 1.159 | $ 0.917 |

| Contract Year | Lost Marginal Profit | | | | |
|---|---|---|---|---|---|
| | Regular Time | | Overtime | | |
| | Guard | Supervisor | Guard | Supervisor | Total |
| CY 1 | $ 67,027 | $ 9,822 | $ (2,392) | $ (507) | $ 73,950 |
| CY 2 | $ 638,831 | $ 81,026 | $ 14,824 | $ 1,434 | $ 736,115 |
| CY 3 | $ 606,567 | $ 76,839 | $ 19,048 | $ 1,977 | $ 704,431 |
| CY 4 | $ 606,567 | $ 76,839 | $ 19,048 | $ 1,977 | $ 704,431 |
| CY 5 | $ 606,567 | $ 76,839 | $ 19,048 | $ 1,977 | $ 704,431 |
| Total Lost Marginal Profit | $ 2,525,559 | $ 321,365 | $ 69,576 | $ 6,858 | $ 2,923,358 |

In addition to lost marginal profits on the "NY Contract", ISI has not been paid for all invoices submitted for services rendered on the "NY Contract." The following is a list of ISI's invoices on the "NY Contract" for which full payment has not been received.

| Date | Invoice No. | Amount | Paid | Outstanding | Act # | Service Period |
|---|---|---|---|---|---|---|
| 5/27/2002 | 60415 | $ 29,710.56 | | $ 29,710.56 | | |
| 7/31/2002 | 61664 | $ 75,478.81 | | $ 75,478.81 | PO5046768 | 02/01/02 to 02/28/02 |
| 8/31/2002 | 62525 | $ 1,066.80 | | $ 1,066.80 | PO5048902 | 08/01/02 to 08/31/02 |
| 8/31/2002 | 62793 | $ 55,409.64 | $ 50,072.42 | $ 5,337.22 | PO5046425 | 08/01/02 to 08/31/02 |
| 10/2/2002 | 63768 | $ 24,028.72 | | $ 24,028.72 | PO5046548 | 09/01/02 to 09/30/02 |
| 10/18/2002 | 64409 | $ 15,868.72 | $ 10,342.81 | $ 5,525.91 | PO5048339 | 10/01/02 to 10/18/02 |
| 12/23/2002 | 66212 | $ 29,924.46 | | $ 29,924.46 | 1B3B02056 | 10/01/02 to 10/18/02 |
| Total | | $ 231,487.71 | $ 60,415.23 | $ 171,072.48 | | |

In addition, ISI is entitled by the Prompt Payments Act ("PPA") to receive interest commencing with the due date of each invoice. Attachment 14 to Jackson's Declaration contains the details of the computation of $35,996.61 for PPA interest through December 31, 2006, for ISI's unpaid invoice amounts. If ISI is not paid for these invoices and PPA interest on them by December 31, 2006, then naturally additional interest should be included in the payment to ISI.

Separate from ISI's lost profits on the terminated "NY Contract;" ISI also was harmed by the loss of revenue and the associated profit on other Government contracts which ISI would have earned "but for" the "Government's "bad acts" on the "NY Contract." Because there has yet to be any discovery of Government documents in this proceeding; there is only one such contract that has been identified. Should additional such contracts be identified during discovery, Jackson anticipates revising his quantification of damages to include any such contracts. Furthermore, if based upon discovery it can be demonstrated that if ISI was precluded from bidding on any other Federal contracts as a result of the Government's "bad acts" on the "NY Contract", Jackson anticipates revising his quantification to include the associated damages.

The table below summarizes ISI's four claim components and the applicable interest. CDA interest on the out of scope training damages and PPA interest on the unpaid invoices has been computed through December 31, 2006. Thus, if payment is made after that date, additional interest would be appropriate.

| Category | | Damages | | Interest | | Total |
|---|---|---|---|---|---|---|
| Out of Scope Training on "NY Contract" | $ | 379,367 | $ | 59,585 | $ | 438,952 |
| Lost Profit on "NY Contract" | $ | 2,923,358 | | | $ | 2,923,358 |
| Unpaid Invoices for "NY Contract" | $ | 171,072 | $ | 35,997 | $ | 207,069 |
| Lost Profit on "FAA Contract" | $ | 115,718 | | | $ | 115,718 |
| Total Damages | $ | 3,589,515 | $ | 95,582 | $ | 3,685,097 |

This Court has held that when a claim has not previously been submitted to the contracting officer, it is without jurisdiction to consider if the contracting officer has not passed on the merits of a claim. See Ulysses, Inc. v. United States, 66 Fed. Cl. 161 (2005); and Renda Marine, Inc. v. United States, 2006 U.S. Claims, Lexis 186 (June 29, 2006). Note: There is a separate *Renda* decision on June 30, which is not the one being cited herein. Both the Renda decision and the Ulysses decision require that before the Court can pass on the merits, the underlying claim must have been submitted, with the appropriate certification, to the contracting officer and the subject of a formal contracting officer's decision or a deemed denial.

Since the contracting officer is generally afforded 60 days and typically requires an additional time period to evaluate the merits of a claim, and because of the numerous exhibits attached in the actual REA, plaintiff suggests a four-month suspension of proceedings. If the contracting officer has failed to render its decision at that time or requests additional time, plaintiff will ask this Court to extend further the time for plaintiff to file either an amended complaint and/or a new complaint for which plaintiff will request consolidation with the current pending matter, since the "lost profits" claim arises out of the same core set of facts as the presently pending claim, which has been modified.

Dated: December 11, 2006

Respectfully submitted:

S/ Sam Z. Gdanski

SAM Z. GDANSKI
Attorney for Plaintiff
3 Rockwood Lane
Suffern, NY 10901
Tel: (845) 362-4800
Fax: (845) 362-4700

CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December 2006, a copy of the Motion for a Suspension of Proceedings was filed electronically with notice to be sent to all parties.

S/ Sam Z. Gdanski

SAM Z. GDANSKI
Attorney for Plaintiff
3 Rockwood Lane
Suffern, NY 10901
Phone: (845) 362-4800
Fax: (845) 362-4700