IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL PROTECTIVE SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2824C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Lettow) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR A SCHEDULING CONFERENCE

Pursuant to Rule 16 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court to conduct a status conference by telephone to discuss various scheduling issues.

Discovery in this case is scheduled to be completed in March 2008. We expect trial soon thereafter. Counsel for the United States has no desire to extend this schedule. Indeed, this case has dragged on too long, to the likely prejudice of the United States.

On the other hand, this case is presently in great disarray. Plaintiff, International Protective Services, Inc. ("International"), recently suggested a vastly expanded scope for the proceedings. Discovery corresponding to this vastly expanded scope would be burdensome and wasteful. Furthermore, discovery corresponding to the original complaint progressed poorly before International sought a stay in September 2005 (which extended all the way until July 30, 2007 before International filed an amended complaint), and very substantial work remains in that area as

well.

Certain issues that International now seeks to bring before the Court, if properly articulated in a proper amended complaint or in response to specific show-cause orders by the Court, can be quickly eliminated by motion. We respectfully suggest that the Court consider issuing such show-cause orders in connection with a new scheduling order.

We urge the Court to issue such show-cause orders because we lack confidence that International will promptly file any new amended complaint, even if our motion to strike the amended complaint filed on July 30, 2007 ("2007 complaint") is granted. Indeed, we respectfully suggest that the Court consider holding our motion to strike in abeyance until the show-cause orders have been issued, briefed, and decided.

Briefing in response to the show-cause orders would have great advantages because the parties need not argue about how the 2007 complaint should properly be construed. Instead, certain discrete issues could be posed, and decided. At that point, the Court is likely to be in a better position to give guidance to International concerning the notice pleading appropriate to this case (in order to preserve International's issues for appeal and to establish cogent parameters for discovery and trial).

## I. Show Cause Why All Lost Profit Claims Should Not Be Barred After January 14, 2003

To support the "lost profits" alleged as damages in the 2007

complaint, International's expert alleges (in the report attached to the 2007 complaint) that International entered into a contract for a period of one year on February 22, 2002, and that four annual options were included in the base contract. The expert assumed that all four options would be exercised, and that performance would continue through February 21, 2007:

> it was reasonable fr ISI to rely upon receiving all "NY Contract" options. However, the GSA terminated ISI's "NY Contract" effective as of October 18, 2002, as a result of "bad acts" by the Government. My lost profits quantification relies upon ISI's counsel establishing such conduct by the Government.

2007 complaint, Attachment A, page 8 of 19 (docket item 37-2, page 8 of 66) (underlining added). Nearly all the lost profits alleged are based upon performance in the unexercised option years (February 22, 2003 through February 21, 2007). 2007 complaint, Attachment A, page 14 of 19 (docket item 37-2, page 14 of 66) (only $73,950 of the $2,923,358 sought relates to the base year).

We respectfully request that the Court issue a show-cause order requiring that International demonstrate why all lost profit claims after January 14, 2003 should not be dismissed with prejudice. The basis for such an order is a document that International executed (delivered to us in discovery) agreeing to perform no guard services in New York during the period from January 14, 2003 through January 13, 2008:

> Defendants agree that they shall not, for a period of 5 years from the date that this Stipulation is executed, either directly or indirectly, through corporate or personal agents or otherwise, conduct, within the State of New York, any security guard work of the type regulated by General Business Law Article 7-A.

A3402 (bates number 3402, placed by International in discovery, was cut off on the copy received by the United States after the first three digits, but the number can be determined by reference to the page before and the page after).[1]

International's "lost profits" claim based upon options never executed has tenuous legal support under any circumstances.[2] However, we are aware of dicta suggesting that

---

[1] "A" refers to the appendix filed with this motion.

[2] As a general matter, the holder of an option has discretion to exercise the option or not. Cont'l Collection & Disposal v. United States, 29 Fed. Cl. 644,650 (1993); 1 Farnsworth on Contracts § 3.23 ("like any other offer, an option imposes no duty on the offeree. The offeree has unfettered discretion to either accept the offer or not"). An option contract binds the giver of the option, not the holder of the option. Gov't Sys. Advisors, Inc. v. United States, 847 F.2d 811, 813 (Fed. Cir. 1988)("An option is normally an option, and nothing limited the circumstances under which the government could decline to exercise that bargained-for right in this

lost profits might be available for unexercised options where a plaintiff demonstrates that the United States acted in bad faith. HiShear Technology Corp. v. United States, 356 F.3d 1372, 1380 (Fed. Cir. 2004). While further research and briefing regarding this issue may have some academic appeal, it is unlikely to be necessary in light of International's inability to perform any guard services in New York during the relevant period.

II. Show Cause Why The FAA Bid Protest Should Not Be Dismissed

In the 2007 complaint, International seeks $115,718 in "lost profits" for a contract awarded to a contractor other than International in September 2003 (the "FAA contract"). 2007 complaint, Attachment A at 19 of 19 (docket item 37-2, page 19 or 66).

Assuming for the sake of argument that International's claim

---

case."). The decision whether or not to purchase a service under an option resides with the option holder; the mere existence of an option does not require the holder to exercise it. See Fields v. United States, 53 Fed. Cl. 412, 419 (2002). When the Government holds an option it may employ whatever lawful criteria it chooses when deciding whether to exercise it or not. Mktg. and Mgmt. Info., Inc. v. United States, 62 Fed. Cl. 126, 130 (2004)("where a contract is renewable solely at the option of the government, the government is under no obligation to exercise the option.").

may be construed as a bid protest, we respectfully suggest that the Court issue a show-cause order requiring that International demonstrate that the Court possesses jurisdiction over this claim, and that lost profits are available as a remedy in a bid protest.

The more reasonable interpretation of International's claim regarding the FAA contract is that International is alleging the tort of business interference. See 2007 complaint, Attachment A at pages 15-19 of 19 (docket item 37-2, pages 15-19 of 66). This Court does not possess jurisdiction over business interference tort claims. 28 U.S.C. § 1491(a).

Moreover, there is no reason to transfer the FAA contract claim to district court because district court also lacks jurisdiction to consider such claims. Misrepresentation claims and business interference claims are barred by the Federal Tort Claims Act. 28 U.S.C. § 2680(h); Alicea Baez v. United States, 976 F. Supp. 102, 107 (D. P.R. 1997) ("the FTCA's waiver of sovereign immunity does not extend to claims arising out of misrepresentation, deceit or interference with contract rights.").

III. Schedule Summary Judgment Regarding Unpaid Invoices

In the 2007 complaint, International seeks $171,072.48 for unpaid invoices. 2007 complaint, Attachment A at 15 of 19 (docket item 37-2, page 15 or 66). This claim is distinct from

most other claims in the 2007 complaint, and should be easily resolved. However, despite repeated efforts in the early years of this litigation to determine the nature of the dispute, no progress has been made.

We respectfully request that the Court set a schedule for a motion for partial summary judgment, to be filed by International (and supported by sworn statements). Once the claims with regard to each invoice are articulated and supported by sworn statements and/or accounting records, then the United States can efficiently respond with its own proof.

IV. Order That International File The Dockets For New York Cases

With all due respect, International, its officers and employees have been involved in numerous proceedings in New York in connection with security guard services and security guard licenses. These proceedings have been administrative and judicial, civil and criminal. International pled guilty to at least one misdemeanor.

In the 2007 complaint, International cites selectively from New York proceedings as part of its allegation that it has been persecuted, and that such persecution, somehow, proves bad faith by the contracting officer when she exercised a mutual clause in the contract that permitted either party to cancel the contract for any reason on 30 days notice. We believe that International's allegation strains credulity. However, if the

New York proceedings are to be the subject of this litigation, then we respectfully request that relevant records be made readily available to both the Court and the United States. In this way, coherent chronologies of events may be constructed and documented.

International, its officers and employees were party to all these proceedings. The documents are uniquely handy to International. We respectfully request that the Court order International to create a separate binder for each proceeding (judicial and administrative, civil and criminal), and to place a copy of each document filed in each proceeding in the respective binder, in chronological order.

Quite frankly, International's "bad faith proved by national hysteria" argument lacks merit and opens up both the Court and the parties to a tremendous waste of time and money for discovery and trial. However, if we must consider this tenuous allegation, then it is fair to order the party with ready access to the court and administrative filings to provide them to the Court and to the United States in an organized way.

CONCLUSION

We respectfully request that the Court hold a scheduling conference, by telephone, to discuss how to move this case forward in the most fair and efficient way possible.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

August 7, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 7, 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR A SCHEDULING CONFERENCE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier

A P P E N D I X