IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INTERNATIONAL PROTECTIVE SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2824C |
| THE UNITED STATES, | ) | (Judge Lettow) |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANTS'S MOTION TO STRIKE AMENDED COMPLAINT

In the response to our motion to strike the amended complaint, filed by plaintiff, International Protective Services, Inc. ("International") on August 20, 2007 ("August Response"), International provides no convincing or direct response to our contention that International failed to comply with Rule 8 of the Rules of the United States Court of Federal Claims ("RCFC").

To the contrary, International freely admits that it did not concisely plead a contract claim. Instead, International defends its tactic of describing in rambling detail how national hysteria following the terrorist attack upon the World Trade Center towers in New York affected the company generally, and how the national mood ultimately caused millions of dollars worth of lost profits:

> Plaintiff included as part of its Amended Complaint a thorough and detailed analysis of the underlying contract leading to the "contract cancellation", including the post 9/11 history

August Response, at 1 (emphasis added);

> If Plaintiff had not thoroughly detailed the events that occurred, and had not included the history and documents relating to ISI's

> attempts to address the actions of GSA and the effects of 9/11 . . .

August Response, at 2 (emphasis added).

The same effort to tie a variety of disparate events to the decision to cancel the contract is manifest in the amended complaint itself. E.g., Amended Complaint, ¶ 22 ("Most Americans, until 9/11, had never heard the name Ousama before and unfortunately ISI became a convenient pawn and target of numerous Federal and State agencies.") (emphasis added); ¶ 24 ("This was a time of anti-Arab hysteria, particularly in the New York area due to the World Trade Center terrorist attack.") (emphasis added); ¶ 31 ("The *New York Daily News* Sunday edition newspaper broke a non-story examining that after the World Trade Center episode, a security company run by Ousama Karawia, an Egyptian-born U.S. citizen is guarding the Statue of Liberty."); ¶ 34 ("Mr. Karawia was forced to hire a publicity firm to combat the anti-Arab frenzy") (emphasis added); ¶ 36 ("Thus, we have a series of four newspaper articles"); ¶ 38 ("Exhibit 5 is New York State's initial complaint to revoke ISI's business license."); ¶ 62 ("An example of the hysteria surrounding 9/11 and the effect on Mr. Karawia, a foreshadowing of the general climate in the coming months and GSA behavior. . . Mr. Karawia went back to his room and then received a phone call telling him his credit card was no good.") (emphasis added).

In the amended complaint, the "anti-Arab hysteria" theme

gives rise to page after page of irrelevant allegations, but it is not the only irrelevant theme. There are also detailed discussions of New York State legal proceedings, activities by a public relations firm, efforts to obtain other contracts, discussions of case law, and discussions about earlier proceedings in this case and the decision by International to hire more experienced counsel.

As we demonstrated in our motion to strike, the resources of the Court and the Department of Justice will be wasted if we are required to respond to the many hundreds of sentences of irrelevant characterizations of extraneous events, and if we are required to proceed by motion practice to whittle the amended complaint back to a concise statement of a contract dispute.

## I. The Irrelevant Allegations Are Not Necessary

In its response, International contends that the rambling diatribes on miscellaneous subjects are necessary to its pleading because its pleading is akin to a pleading of fraud. August Response, at 1-2. International is mistaken, for two separate and sufficient reasons.

First, International is mistaken regarding the rules for pleading. No rule requires special pleading for bad faith. See RCFC 9(b). To the contrary, prejudice against an Arab contractor may be summarily alleged. RCFC 9.

Second, most of the irrelevant themes (set forth in detail

in many dozens of pages) do not support in any way the allegation that the contracting officer acted in bad faith when she canceled the schedule contract. Detailed discussions of newspaper articles and the hiring of public relations firms, even if accepted as true, do not prove that the contracting officer acted in bad faith by terminating the contract of a security firm which was upon the verge of losing its license to do security work in the state where the Federal facilities were located.

Indeed, even the allegations regarding how unfairly the New York licensing agency and the New York administrative decision-maker treated International do not support any claim of bad faith by the contracting officer. The contracting officer had no authority to review the decisions of the New York licensing agency (or the decisions of New York courts). Furthermore, the contracting officer had no authority to continue the contract of a security firm that had lost the necessary license to perform security services.

Thus, allegations that International was likely to lose its license in 2002 (even if the likelihood was increased by unfair decisions made by the New York authorities) only support the reasonableness of the contracting officer's decision in this case. A contracting officer who failed to take action upon learning that International was upon the verge of losing its New York license risked losing its security contractor abruptly, and

so risked leaving Federal facilities unprotected or inadequately protected.

II. <u>The Irrelevant Allegations Do Not Address Show Cause Orders</u>

In its response, International seeks to excuse its irrelevant allegations upon the grounds that such allegations cogently address issues raised in our motion for a scheduling conference:

> A separate reason for the length and specificity of the Amended Complaint was to provide sufficient detail in order to preclude a request for a show cause letter. Examining the factual background and the documents attached presents sufficient evidence of the bad acts of the government and presents to the Court why this case is not suitable for resolution by summary judgment or orders to show cause.

August Response, at 2. This contention is without merit, either as a general matter, or in the context of our pending motion.

As a general matter, we have suggested that the Court might issue show cause orders as an efficient and just method of paring the issues in this case back to matters relevant to the contract claim, if any, contained in the complaint. The irrelevant allegations in no way make the show cause orders unnecessary. To the contrary, it is the presence of hundreds of irrelevant allegations that makes the need for the show cause orders acute.

Specifically, the two show cause orders that we suggested remain appropriate in light of the amended complaint filed.

Most importantly, it would be appropriate for the Court to

issue an order requiring International to demonstrate why all claims for lost profits subsequent to January 14, 2003 should not be dismissed, with prejudice. Indeed, the show cause order would be a courtesy to International; there is sufficient basis for a judgment upon the pleadings regarding this issue.

In the amended complaint, International admits that it settled the lawsuit concerning New York's efforts to revoke the International license to perform security services. Amended Complaint, ¶ 45. International cites Exhibit 32 to the Amended Complaint as the relevant settlement agreement. Id. Exhibit 32 demonstrates that International could not have performed any work pursuant to the contract at issue in this case (or any option that might have been exercised) after January 14, 2003:

> Defendants [including International] agree that they shall not, for a period of 5 years from the date that this Stipulation is executed, either directly or indirectly, through corporate or personal agents or otherwise, conduct, within the State of New York, any security guard work of the type regulated by General Business Law Article 7-A.

Amended Complaint, Exhibit 32, paragraph 8; see id. at caption and signature block (identity of "defendants" and date of execution of the stipulation).

It would also be appropriate to issue a show cause order requiring International to demonstrate why the FAA bid protest should not be dismissed. Assuming for the sake of argument that

this claim is a bid protest within the jurisdiction of the Court, International should provide some support for its claim for lost profits as a remedy in a bid protest. Alternatively, if the claim is more reasonably interpreted as a business interference claim, then International should be required to demonstrate why such claim should not be dismissed because it sounds in tort.

II. Our Motion To Strike Should Be Granted

As demonstrated above, and in our motion to strike, the amended complaint is grossly bloated with extraneous matters, and does not comply with RCFC 8. We respectfully request that our motion to strike be granted.

With all due respect, even if our motion to strike is granted, we are not confident that the next amended complaint will be promptly filed or properly revised. Thus, we believe that guidance from the Court would be in the interests of justice and judicial economy. Accordingly, in addition to granting our motion to strike, we also respectfully request that the Court grant our motion for a scheduling conference, filed August 7, 2007.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

August 23, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 23, 2007, a copy of the foregoing "DEFENDANT’S REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT’S MOTION TO STRIKE AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier