**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INTERNATIONAL PROTECTIVE SERVICES, INC.,** | ) | |
| | ) | **No. 03-2824C** |
| **Plaintiff,** | ) | **(Judge Lettow)** |
| **V.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

<u>PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR A SCHEDULING CONFERENCE</u>

This is Plaintiff International Protective Services Inc.'s ("Plaintiff" "IPI" or "ISI") Response and Opposition to Defendant's Motion for a Scheduling Conference which requests the Court to issue show cause orders. Defendant's motion requesting specific show cause orders is an attempt to short circuit Plaintiff's bad faith claim, and the litigation process as a whole. The government has raised four arguments each of which will be addressed below.

Defendant first raised the issue of lost profits, asking the Court to issue a show cause order requiring IPI to demonstrate why all lost profit claims after January 14, 2003 should not be dismissed with prejudice. This request is premature because further discovery is necessary. Even the Motion itself recognizes there is contrary case law. <u>HiShear Technology Corp. v. United States</u>, 356 F.3d 1372, 1380 (Fed. Cir. 2004). ISI specifically stated in its Motion for a Suspension of Proceedings filed on or about December 11, 2006, that it was not only seeking Lost Profits on the terminated GSA contract but "Separate from ISI's lost profits on the terminated "NY Contract", ISI also was harmed by the loss of revenue and the associated profit

on other government contracts which ISI would have earned ‘but for’ the ‘Government’s ‘bad acts’ on the ‘New York Contract.’” Plaintiff stated that while two such contracts have been identified additional such contracts are expected be identified during discovery. Mr. Jackson anticipated revising his quantification of damages to include any such contracts and include the associated damages.

Had the GSA Contract not been terminated in bad faith, there never would have been a settlement agreement and ISI would not have been forced to cease business in NY State on the GSA Contract. In general the DOJ’s erroneous position is that because of ISI’s agreement as part of a dispute settlement not to do business in NY State commencing on or about January 23, 2003, all damages are barred. Of course as of that date, ISI had already been terminated from the GSA Contract. Therefore, as of the stipulation in the state dispute that ISI would not do business in NY, ISI was not doing other business in NY and therefore it was not giving up much related to that portion of the agreement. Had ISI not been terminated in bad faith, ISI would never have agreed to cease doing business in NY, or if the agreement with NY State would have had other terms and conditions.

This case is far from ready for Show Cause or Summary Motion proceedings.

<u>Apex International Management Services</u>., 94-2 BCA 26, 842 Mar. 4, 1995 demonstrated that the strong proof required to demonstrate bad faith, if established, entitles a plaintiff to the "lost profits" that it would ordinarily not be entitled.

Plaintiff requests that the case proceed in a normal fashion and with a reasonable discovery schedule. Further, Defendant has not opposed the various requests for extensions of time and should not be able to argue prejudice at this point in time. The Defendant wishes to forestall the ugly fact that the government’s breach of contract and bad faith was motivated by

personal animus, which is the necessary element to prove “bad faith” and entitlement to “lost profits”

Defendant wishes to gloss over the ugly diatribe which will come out concerning the government’s actions as a whole. In a similar case where there were highly sensitive issues, in Impresa Construzioni Domenico Garufi, 44 Fed. Cl. 540, (1999), the lower Court before being reversed was loathe to deal with similar sensitive issues concerning Mafia involvement in government contracts. The lower Court stated “Plaintiff has also made inflammatory allegations against Mr. Schiavo, a member of the Technical Evaluation Board in this procurement." The lower court, was clearly disturbed by Plaintiff raising these "inflammatory" allegations, Impresa Construzioni Domenico Garufi, 44 Fed. Cl. 540 (1999). Nevertheless ultimately upon being reversed on this issue by the Federal Circuit in the case of Impresa Construzioni Domenico Garufi, 238 F.3d 1324, (2001), upon remand, and further examination, the lower court granted injunctive relief and the GAO subsequently revived its regulations to have jurisdiction on challenges to affirmative determinations of responsibility in appropriate circumstances. Impresa Construzioni Domenico Garufi, 52 Fed. Cl. 421 (2002).

The impact of the underlying Garufi case on government contractors, and the public at large can not be overstated. The Government Accountability Office revised its regulations to hear challenges to affirmative determinations of responsibility. In FN Manufacturing, Inc. B-297172, B-297172.2, 2005 Comp. Gen. Proc. Decision Page 212 December 1, 2005, the GAO explained the significant impact the Garufi series of cases had:

“on December 31, 2002 our Bid Protest regulations were revised to add as a specified exception protests ‘that identify evidence raising serious concerns that, in reaching a particular responsibility determination, the contracting officer unreasonably failed to consider available relevant information or otherwise violated the statute or regulation.’ 67 Fed. Reg. 79, 833, 79, 836 (2002). This change was made in light of a seminal decision from the United States Court of Appeals for the Federal Circuit *Impresa Construzioni Geom. and Domenico Garufi v. United*

*States*, 238 F.3d 1323 (Fed. Cir. 2001) ("Garufi I"), which held that affirmative determinations of responsibility by contracting officers are reviewable by the Court of Federal Claims under the 'arbitrary and capricious' standard applicable under the Administrative Procedure Act. We explained in the preamble to the revision that it was 'intended to encompass protests where, for example, the protest includes specific evidence that the contracting officer may have ignored information that by its nature, would be expected to have a strong bearing on whether the awardee should be found responsible.' 67 Fed. Reg. 79, 833, 79, 844; *see also* Verestar Gov't Servs. Group, B-291854, B-291854.2, April 3, 2003, 2003 CPD P 68 at 4."

Sensitivity to the issues which are core to this proceeding should not forestall a thorough examination of what occurred herein and its consequences. The learning experience and the initial disfavor of the court to address them in Impresa ultimately had far reaching consequences on the entire issue of "responsibility" of government contractors. This court should let discovery proceed and no doubt will lead to firming up the issue of "bad faith" in government contracts.

Some guidance may be had from bid protest actions specifically in the context where "bad faith" was alleged and whether supplemental discovery which normally is generally limited in the context of bid protest decisions was permitted. In International Resource Recovery, Inc. v. United States, 61 Fed. Cl. 38, June 24, 2004, there were allegations of bias, prejudice and bad faith that depended upon a governmental official's past conduct toward a bidder. The Court noted that such allegations of bad faith must rest on strong evidentiary footing to overcome the normal presumption of regularity and good faith conduct by Government agency officials. It noted that numerous decisions hold that allegations of bad faith must be based upon hard facts in order to justify discovery and supplementation of the administrative record. The decision noted that the United States Court of Appeals for the Federal Circuit held that to prevail on an allegation of bad faith, a bid protestor must reach well nigh irrefragable proof. It held that a protestor must establish and meet the clear and convincing standard of proof of specific intent to injure the protestor. In that case the Court recognized that where there were allegations that the contracting officer harbored animosity towards plaintiff based on allegations of demonstrated

animosity and prejudice, allowed discovery and cited a number of decisions which allowed for the discovery. Typically discovery is limited in bid protest matters but these cases are of use because even in those extra restrictive cases, the Court in International Resource Recovery, Inc. held, as this Court should, that these allegations of bias and prejudice obviously require extra record evidence. In IRRI the Court held "Allowing depositions would go towards recognizing a long pattern of questionable activity that might be relevant to prove agency bias. *J.C.N. Construction Co. v. United States*, 60 Fed. Cl. 400, 405 N.8 (2004) allowing depositions regarding asserted bias and de facto debarment); *Orion International Tech v. United States*, 60 Fed. Cl. 338, 343, (2004) stating that the record may be supplemented with . . . relevant information that by its very nature would be not bound in an agency record such as evidence of bad faith; *Cybertech Group, Inc. v. United States*, 48 Fed. Cl. 638, 651 (2001) allowing five depositions and an evidentiary hearing on allegations of bad faith of government employees; *Buffalo Cent. Terminal v. United States,* 886 Fed. Supp. 1031, 1046 (W.D. N.Y. 1995) allowing discovery limited to the bad faith allegation where a plaintiff alleged bad faith on the part of the agency officials and provided a reasonable factual basis of such an allegation."

Further the Court of Appeals for the Federal Circuit in Impresa Construzioni Domenico Garufi, 238 F.3d 1324, (2001), went on to order supplemental depositions, the information of which formed the basis of the lower court's reversal of its initial decision and granted injunctive relief.

Second, Defendant asks for a "Show Cause Why The FAA Bid Protest Should Not Be Dismissed." Defendant is incorrect in labeling this as a "bid protest". Defendant incorrectly posits that it should be framed as a bid protest, stating "Assuming for the sake of argument that International's claim may be construed as a bid protest…" This presumes an argument that

plaintiff has not made and Defendant has merely set up a straw man to knock down. Plaintiff has never considered this aspect a bid protest but merely as an indication of a systematic de facto debarment. Defendant is attempting to frame this aspect as a bid protest issue only to ease its request to dismiss it as a bid protest.

Defendant similarly alleges that "The more reasonable interpretation of International's claim regarding the FAA contract is that International is alleging the tort of business interference". This argument is also misplaced, and like the mislabeling of Plaintiff's argument as a "bid protest", Plaintiff does not allege the tort of business interference. Plaintiff is well aware that this Court does not possess jurisdiction of a tort claim but is aware of cases that have found that a failure to cooperate in the performance of a contract and a bad faith termination such as cited to as in Apex International Management Services., 94-2 BCA 26, 842 Mar. 4, 1995 allows for lost profits. Even the Defendant's request for a status conference has the caveat of HiShear Technology Corp. v. United States, 356 F.3d 1372, 1380 (Fed. Cir. 2004).

This Court has found substantial significant "lost profits" even for a newly formed company not yet in business in Energy Capital Corp. v. United States, No. 97-293C, 2003 US Claims Lexis 112, April 23, 2003**.** The Federal Circuit ruled that the ""present value of the damages award should have been calculated using a risk-adjusted discount rate," and "in that limited respect," remanded the case to this Court "for determination of a final damages award based on the risk-adjusted discount rate of 10.5 percent." Energy Capital Corp. v. United States, 302 F.3d 1314, 1334 (Fed. Cir. 2002)."" The Court of Federal Claims further stated at [*3], "Using the same method and noting that the period for the lost profits begins from the date of judgment, August 21, 2000, and runs through June 30, 2011 (a period of approximately 10.86 years) (*Id. at 428-29*), the Court now has all the variables to compute the present value of

Plaintiff's award: 1) sum for discounting, $13,897,000, pursuant to this Court's amended judgment, filed December 19, 2000; 2) risk-adjusted discount rate, 10.5 percent, as mandated by the Federal Circuit; and 3) period of discounting, from date of judgment, of 10.86 years."

Thus the Court projected what the lost profits were for a substantial period into the future, beyond the term of the contracts as in *Apex*, supra.

The third aspect concerning unpaid invoices again attempts to shift the onus to the Plaintiff. Defendant's demand that Plaintiff file summary judgment motions on this issue and requests for the Court to issue a show cause order instructing Plaintiff to file a partial summary judgment is at odds with the fact that Defendant, subsequent to filing its show cause, informed Plaintiff it wishes to take a party deposition on this issue.

Plaintiff will next address the fourth aspect of Defendant's Motion requesting <u>all</u> filings in all proceedings. Aside for the New York State matter these files are in the federal government's possession. Defendant's co-counsel at GSA has access to all the federal filings and there is no need to put Plaintiff to the expense of providing the filings already in Defendant co-counsel's possession. Further, to file a full set of all correspondence, communications and filings in the New York State proceedings would be unduly burdensome, and irrelevant, because defendant has not demonstrated specifically which of these materials are necessary to its defense.

Accordingly, Plaintiff asks that the Court deny Defendant's requests for the Court to issue show cause orders contained in its Motion for a Scheduling Order.

Dated: August 24, 2007

Respectfully submitted,

S/ Sam Z. Gdanski

SAM Z. GDANSKI
Attorney for Plaintiff

3 Rockwood Lane
Suffern, NY 10901
Phone: (845) 362-4800
Fax: (845) 362-4700

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2007, a copy of Plaintiff's Response and Opposition to Defendant's Motion For a Scheduling Conference, was filed electronically with notice to be sent to all parties.

S/ Sam Z. Gdanski

SAM Z. GDANSKI
Attorney for Plaintiff
3 Rockwood Lane
Suffern, NY 10901
Phone: (845) 362-4800
Fax: (845) 362-4700