**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INTERNATIONAL PROTECTIVE SERVICES, INC.,** | ) | |
| **Plaintiff,** | ) | **No. 03-2824C** |
| **V.** | ) | **(Judge Lettow)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO THE COURT'S ORDER DATED AUGUST 30th 2007**

Plaintiff wishes to clarify the scope of damages in response to the court's request in its Order dated Aug. 30th 2007, that the parties address whether it is proper to amend the original complaint to add claims respecting contracts other than G7-07-07F-0195M (sic). Plaintiff believes the correct reference should be GS-07-F-0195M which is the FSS, Federal Supply Schedule "Contract". The cancellation that is referred to in Paragraph 2 of the Amended Complaint was to two things. One, the FSS schedule, GS-07-F-0195M which was awarded February 22, 2002,[1] and two, the instant Task Order that was awarded February 28, 2002[2], under the FSS contract which is #GS02P02CID0001. This Task Order covered the specific scope of work for guard services in courthouses other than NYC and Westchester, #GS02P02CID0001, and was awarded shortly after the award of the FSS schedule.

Plaintiff believes that the court should approach its analysis from the following perspective. The cancellation of the FSS contract GS-07-F-0195M as well as the Task

[1] Exhibit 1 is the Letter of Award to ISI of the FSS Schedule dated February 22, 2002. The Contract and the Solicitation are available and will be filed separately.

Order GS02P02CID0001 is without question within this Court's jurisdiction because as will be discussed below and as the Court is aware, under a Federal Supply Schedule, the process allows for placement of task orders for individual separate requirements, ie. task orders. Further discovery should develop numerous other task orders that could have been awarded under the FSS contract which was cancelled.

The separate issue of the court concerning "contracts other" than the reference to the FSS contract will be addressed separately but we believe similarly properly flow and are also within the ambit and jurisdiction of this Court as well, such as the FAA contract.

The FSS contract was awarded February 22, 2002, and the first task order was awarded February 28, 2002 and subsequently both were subsequently "cancelled" on September 19, 2002, Exhibit 19 to the Amended Complaint. As plaintiff has repeatedly stated we believe this was done in bad faith.

The cancellation occurred by GSA letter dated September 19, 2002, Exhibit 19 to the Amended Complaint, and despite ISI's attempts to convince the contracting office that it had the capability to continue to perform in light of its prevailing in a New York State Supreme Court action, Ms. Brannan reconfirmed the cancellation, Exhibit 22 to the Amended Complaint. ISI then attempted to reinstate its company on the FSS and consulted with Washington Headquarters of GSA confirmed in an e-mail dated January 22, 2003 by its general counsel, "Thank you for taking the time to talk to me today about the process of reinstating our company on the FSS. Your time and patience was greatly appreciated. Thank you for sending me these attachments. We will follow them to the letter and re-apply immediately." Exhibit 27 attached to the Amended Complaint. ISI requested GSA to have someone other than Ms. Brannan review the

[2] Exhibit 2 is the Notice of Award of the Task Order dated February 28, 2002.

reinstatement request by ISI for the FSS schedule., Exhibit 29 attached to the Amended Complaint. GSA denied this request and said the matter would stay with Ms. Brannan, Exhibit 30 attached to the Amended Complaint. By letter dated May 1, 2003 in response to ISI's request to be reinstated on the FSS schedule, Ms. Brannan concluded that ISI was considered non-responsible and therefore its proposal to perform security guard services to the Federal government was rejected and would receive no further consideration. See Exhibit 33 to the Amended Complaint.

Thus, the scope of damages sought flows from the ongoing initial cancellation of contract GS-07-F-0195M awarded on Feb 22, 2002, as well as damages under the remaining option years under the instant task order #GS02P02CID001, and other task orders that could have been issued under that contract GS-07-F-0195M. Note GSA's denial in Exhibit 33 in response to Solicitation No. 7FXP-D4-01-0539-B for ISI's reinstatement under the FSS schedule. Also, as alleged in the Amended Complaint, under the FAA contract and others yet to be identified.

Thus the reported cases that do not allow for damages on "other" contracts because they were not foreseen by the parties, typically called consequential damages, or loss of business opportunity, do not apply in this instance. Here the parties saw and mutually understood that other contracts could be awarded under the FSS "Contract".

There is some confusion because interchangeably documents refer to both the FSS contract number as well as the task order. For example the government's award dated February 28, 2002, Exhibit 2 states "Your offer on General Services Administration (GSA) Federal Protective Service (FPS) solicitation GSO2PO2CID001 with Amendment #1….is hereby accepted. On the second page there is a paragraph that states "All task

order related correspondence and invoices should clearly refer to GSA Task Order #GSO2PO2CID0001."

The next paragraph on page 2 states "The five-year grand total value of this requirements Task Order comprised of one base year, plus four one year options if exercised by the government, is as proposed by you $59,501,756.67."

In addition Exhibit 3, Clause 552.216-72 of the FSS schedule Contract, Placement of Orders (SEP1999) (Alternate II–SEP1999), states that "(a) the organizations listed below may place orders under this contract. Questions regarding organizations authorized to use this schedule should be directed to the Contracting Officer.

(1) Executive agencies.

(2) Other Federal Agencies

(3) Mixed–ownership Government corporations

(4) The District of Columbia

(5) Government Contractors authorized in writing by a Federal agency pursuant to 48 CFR 51.1.

(6) Other activities and organizations authorized by statute or regulation to use GSA as a source of supply.

Exhibit 1, attached to this brief is a letter dated February 22, 2002 preceding the award of the task order which initially awarded the actual Federal Supply Schedule contract. The first paragraph states "Congratulations on receiving your Federal Supply Schedule contract. In addition to a copy of your contract, No. GS-07F-0195M effective

February 25, 2002, for SIN 246-54 under solicitation 7FXP-D4-01-0539-B the following terms are enclosed."

Therefore as we have indicated there is both an FSS contract as well as an individual task order and we believe that the Federal Supply Schedule then would have permitted award of additional task orders but by virtue of the cancellation of both the task order and the FSS contract other damages may properly flow and be considered under the jurisdiction of this court.

In Ellsworth Associates Inc. v. United States, 45 Fed. Cl. 388 (1999) the Court explained how an FSS Schedule type contract works. "See FAR at 8.401. The FSS program 'provides Federal Agencies with a simplified process for obtaining commonly used commercial supplies and services at prices associated with volume buying.' FAR at 8.401(a). This objective is accomplished by allowing the agency to select products and services from a list of eligible contractors whose pricing schemes have been pre-approved by GSA. See *id*. The process is 'simplified' because, in an FSS procurement the agency need not comply with the comparatively more formal and arduous procedures for contracting by negotiation set forth in Part T15, FAR at 15.000. See FAR at 8.404(a). Because the 'GSA has already determined the prices of items under [the FSS program] to be fair and reasonable, 'agencies' need not seek further competition [or] synopsize their requirements.'" Ellsworth Associates Inc. v. United States, 45 Fed. Cl. 388 (1999).

Perhaps the case most directly on point with respect to the damages that flow from the cancellation of the FSS, GS-07-F-0195M , is Ace-Federal Reporters, Inc., et al. v. GSA, GSBCA Nos. 13298-REM 13507-REM et al, 2002 GSBCA Lexis 137 (March 26, 2002) where the Board held "In these appeals, six court reporting companies seek

$4,972,363.85 in lost profits due to breaches of their mandatory General Services Administration (GSA) Multiple Award Schedule Contracts for court reporting services by numerous user agencies." (Underlining added). The case noted that it was before the Board after a reversal and remand by the United States Court of Appeals for the Federal Circuit in Ace-Federal Reporters, Inc., v. Barram, 226 F. 3d 1329 (Fed. Cir. 2000). The Board noted that previously, before the remand, it had concluded that the terms of appellant's Multiple Award Schedule Contracts precluded recovery of lost profits because the contracts were not requirements and no individual contractor was given the exclusive right to provide all the mandatory user agencies court reporting services or is guaranteed that any quantities would be ordered. It said that previously while the Board recognized that user agencies were not free to order services off schedule and should have ordered from one of the multiple awardees, it concluded that the fact that the agencies did so did not give rise to the remedy of lost profits under the terms of the contracts. The Court of Appeals reversed, concluding that the government's promise that it would purchase only from contractors on the schedule (with few exceptions) had substantial business value and the government's breach of that promise could be remedied, therefore the Court of Appeals remanded the matter to the Board for determination of the appropriate damages due appellants.

ISI recognizes that the facts are not identical to Ace-Federal in that certain agencies may not have a mandatory requirement to use guard services off of ISI's FSS scheduled contract but the cancellation and the subsequent denial of re-instatement to the FSS schedule precluded absolutely all work from all federal using activities outside of New York. In Ace-Federal, supra, the Board quoted the Federal circuit "there is sufficient

content to the contracts to permit the determination of an appropriate remedy 'if a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery,' and the Board's duty is to 'make a fair and reasonable approximation of the damages,' citing Locke v. U.S., 283 F.2d [521] at 524 [Ct. Cl. 1960] the relevant factors in determining the value of a chance for obtaining business include: the total amount of business the plaintiff would have been eligible for; any material facts that would have tended to prevent the plaintiff from receiving his proportionate share of said business and the average expenses incurred in fulfilling the obligations of the contract." Thus plaintiff's assertion that further discovery is necessary is borne out by federal circuit precedent.

In Idea International Inc. v. U.S., 74 Fed. Cl. 129, the court noted that procurements could limit bidders to those holding the applicable FSS schedule contract noting the importance of such a provision. Delivery orders, i.e. individual task orders can be placed to a contractor like ISI under a Federal Supply Service (FSS) contract. Cybertech Group, Inc. v. U.S., 48 Fed. Cl. 638.

With respect to “other contracts”, plaintiff is aware of decisions such as Land Movers, Inc. 92-1 BCA 24473. That case was set in a factual predicate not involving an FSS contract, but a more typical individual contract which held that costs which did arise under or relate to performance of the contract were denied as damages for general loss of business were not recoverable under a federal contract when such damages did not arise under or relate to the contract. This is more often quoted as an absolute and plaintiff is never given the opportunity to prove that such consequential damages can be foreseen. In point of fact, in one case the court held that “... a suit for breach of one contract

seeking consequential damages as to other contracts would be maintainable in theory" but because of the facts in that case involving a novation agreement the Court held the plaintiff had to prove that at the time of the novation agreement the consequential damages were foreseeable. Ingalls Shipbuilding Division, Litton Systems Inc. 78-1 BCA 13,038 (1978). If we look to the commercial marketplace consequential damages has been allowed.

Although loss of profits on "other" contracts normally are not recoverable in suits against the U.S. Government exceptions to the rule exist. They have also been labeled as "ripple effect" damages and these typically are rarely allowed but cases recognize, as plaintiff has alleged, all along that the same way "lost profits" under the instant contracts are allowed where there is "bad faith" when a contractor can satisfy the well nigh irrefragable standard of proof, of intentional specific malice directed against the contractor, which we believe plaintiff can satisfy that these "ripple effect" damages contracts are permissible similarly in such exceptional circumstances. In Smith v. U.S., 34 Fed.Cl. 313 (1995) although the court denied the ripple damages sought it recognized that there could be appropriate circumstances in which such damages would be compensable but that the plaintiff in that case could not meet that high burden.

Plaintiff has already provided prima facie indication that plaintiff believes it will be able to satisfy this burden.

Dated: September 12, 2007

Respectfully submitted,

S/ Sam Z. Gdanski

SAM Z. GDANSKI
Attorney for Plaintiff
3 Rockwood Lane
Suffern, NY 10901
Tel: (845)362-4800
Fax: (845)362-4700

**CERTIFICATE OF SERVICE**

I hereby certify that on this day of September 12, 2007, a copy of Plaintiff's Response to the Court's Order dated August 30, 2007 was filed electronically with notice to be sent to all parties.

S/ Sam Z. Gdanski
SAM Z. GDANSKI
Attorney for Plaintiff
3 Rockwood Lane
Suffern, NY 10901
Tel: (845)362-4800
Fax: (845)362-4700